IN THE UNITED STATES BANKRUPTCY CODE
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>AAA IMPORTS, INC.<br><br>Debtor | **CASE NO: 10-04048 (BKT)**<br><br>**CHAPTER 11** |
| In re<br><br>CARIAN MANAGEMENT, INC.<br><br>Debtor | **CASE NO: 10-04052 (BKT)**<br><br>**CHAPTER 11** |

### STIPULATION ON THE USE OF CASH COLLATERAL AND ADEQUATE PROTECTION UNTIL DECEMBER 31, 2010

TO THE HONORABLE BRIAN K. TESTER,
U.S. BANKRUPTCY JUDGE:

COME NOW AAA Imports, Inc. (the "AAA"), Carian Management, Inc. ("Carian") (collectively the "Debtors"), and Banco Popular de Puerto Rico ("Banco Popular"), each by their undersigned counsel and respectfully state, allege and pray as follows:

### Preliminary Statement

After substantial negotiations, the Debtors and Banco Popular have agreed to the Stipulation contained herein, whereby, among other things, Banco Popular consents to the Debtors' limited use of certain of Banco Popular's cash collateral (the "Cash Collateral") to satisfy certain operating expenses solely under and pursuant to the terms of the Stipulation and the adequate protection provided herein. Currently, the Debtors have no debtor in possession financing and, thus, require the use of Cash Collateral to satisfy operating expenses and continue operating their businesses. Therefore, Banco Popular and the Debtors respectfully submit that the terms of this Stipulation should be promptly approved as they are critical and necessary to

provide and assure the continuity of the Debtors' businesses, the preservation of the going concern value of the Debtors' estate and the ability to maximize prospects for recoveries to the Debtors' stakeholders.

### Jurisdiction and Venue

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of this proceeding and of the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein are sections 105(a), 361, 362, 363, 364, 365, 1107 and 1108 of the Bankruptcy Code, Fed. R. Bank. P. 4001(b) and Local Bankruptcy Rule 4001-2.

### Background

**A. The Bankruptcy Filing**

4. On May 13, 2010, the Debtors filed voluntary petitions for relief under the provisions of 11 U.S.C. Chapter 11, and as of that date have been managing their affairs and operating their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. See Dkt. No. 1 in the AAA and Carian cases.

5. The bankruptcy filings are primarily aimed at restructuring Debtors' obligations and operations, for which it is essential and critical that the terms of the Stipulation be approved, to allow the corporate Debtors access to the Cash Collateral and, thus, to maintain the viability of the Debtors' businesses as a going concern.

6. On May 24, 2010, Banco Popular and AAA filed a "Stipulation for the Interim Use of Cash Collateral and Adequate Protection" (the "Stipulation") whereby the parties

thereto agreed to certain terms regarding the interim use of Cash Collateral. The Stipulation was approved by the Court on May 26, 2010. See Dkts. No. 15 and 18 in the AAA case.

7. On June 9, 2010, AAA, Carian, and Banco Popular filed a "Joint Motion for Entry of Order Extending Stipulation for the Interim Use of Cash Collateral until June 15, 2010" (the "Joint Motion"). See Dkt. No. 44 in the AAA case. Pursuant to the Joint Motion, Carian adopted all of the terms and conditions in the Stipulation.

8. On June 10, 2010, the Court entered an order granting AAA and Carian's "Amended Motion to Request Administrative Consolidation" (Dkt. No. 9). See Dkt. No. 46 in the AAA case and Dkt. No. 19 in the Carian case.

9. On that same date, the Court entered an order approving the Joint Motion. See Dkt. No. 48 in the AAA case.

10. On June 24, 2010, AAA, Carian, and Banco Popular filed a "Joint Motion for Entry of Order Extending Stipulation for the Interim Use of Cash Collateral until June 30, 2010" (the "Second Joint Motion"), which was approved by the Court on June 29, 2010. See Dkts. Nos. 71 & 73.

**B.      The Loan Documents**

11. The Debtors (among other borrowers) and Westernbank Puerto Rico[1] entered into a Loan and Security Agreement, dated May 31, 2006, as amended, supplemented, and/or restructured pursuant to: (i) an Amendment to Loan and Security Agreement, dated May 7, 2007; (ii) a Second Amendment to the Loan and Security Agreement, dated May 23, 2008; (iii) a Letter for Temporary Modification dated February 23, 2009 (collectively, the "Loan Agreement"); and (iv) other guarantees, security agreements, agreements, documents, and instruments referred to in

---

[1] All references to Westernbank Puerto Rico include Banco Popular de Puerto Rico –and vice versa- as the owner, as of April 30, 2010, of all credit relationships among AAA and Carian and its affiliates.

-3-

the Loan Agreement or at any time executed and/or delivered in connection therewith or related thereto (collectively, the "Financing Agreements").

12. Pursuant to the Financing Agreements, Westernbank provided to the Debtors certain term and revolving credit facilities.

13. To secure the payment and performance of all their obligations under the Financing Agreements, the Debtors granted to Westernbank a continuing security interest over all or nearly all of their respective assets (collectively, the "Collateral")[2].

14. As inducement for, and in consideration of, Westernbank making loans and advances and providing other financial accommodations to the Debtors under the Financing Agreements (and, to secure and satisfy the obligations under the Financing Agreements), the Debtors (among others) executed the following additional documents (each as may have been subsequently amended or modified): (i) certain promissory notes; (ii) individual and corporate

---

[2] The Collateral includes, among other things, (each capitalized term herein shall have the same meaning ascribed to such term under the Financing Agreements): (a) Accounts; (b) all present and future contract rights, general intangibles (including tax and duty refunds, registered and unregistered patents, trademarks, service marks, copyrights, trade names, applications for the foregoing, trade secrets, goodwill, processes, drawings, blueprints, customer lists, licenses, whether a licensor or licensee, choses in action and other claim and existing and future leasehold in equipment, real estate and fixtures), chattel paper, documents, instruments, securities and other investment property, letters of credit, bankers' acceptances, guaranties and Intellectual Property; (c) all present and future monies, securities, credit balances, deposits, deposit accounts and other property of Borrowers held at any time by or in transit to Lender or its affiliates or at any other depository or other institution from of for the account of Borrowers, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of Accounts and other Collateral, including rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing Accounts or other Collateral, including returned, repossessed and reclaimed goods, and deposits by and property of account debtors or other persons securing the obligations of account debtors; (d) Equipment; (e) Records; (f) Deposit Accounts, Payment Intangibles, promissory notes, supporting obligations and property securing rights to payment, electronic and tangible chattel paper, transfer by states and government units, non assignable general intangibles, promissory notes, surety claims, lien claims; (g) The Mortgage Notes and Mortgages: (h) Inventory; (i) Assignment of key personnel life policies on the lives of Orlando Adrovet Molina and Andres J. Martinez Quiñones; (j) All Receivables, to the extent described; (k) All instruments, including without limitation promissory notes; (l) All documents; (m) All letters of credit, letter of credit rights, bankers, acceptances and similar instruments; (n) All (i) Investment Property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (ii) monies, credit balances, deposits and other property of any of the Borrower or Guarantor received at any time by or in transit to Lender at any other depository or other institution from or for the account of any Borrowers or Guarantor; (o) Assignment of all present and future leases; (p) All present and future assets and personal property; and (q) All income, products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of any or all of the foregoing.

guarantees; (iii) certain mortgage notes; (iv) certain deeds of mortgages; (v) assignment of personnel life policies; and (vi) any other agreements, financing statements, documents and instruments at any time executed and/or delivered in connection with the foregoing documents or related thereto (collectively with the Financing Agreements, the "Loan Documents").

15. As of the Petition Date, each of the Debtors recognizes and affirms that the following amounts are currently outstanding, due and payable under the Debtors' Financing Agreements and the other Loan Documents: $17,060,749.20 (collectively, the "Loans").

**Stipulation**

16. The Debtors require the use of the Cash Collateral to pay (among other things) present operating expenses in order to ensure a continued supply of goods and services essential to the Debtors' continued viability. Therefore, the Debtors have requested from Banco Popular that Banco Popular agree and authorize the Debtors to use certain of Banco Popular's Cash Collateral during the Bankruptcy Case. Banco Popular is willing to authorize such use solely under, and in reliance upon, the terms and conditions and adequate protection set forth herein.

17. Section 363(c)(2) of the Bankruptcy Code provides that the Debtors may not use, sell or lease Cash Collateral unless: "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2).

18. Pursuant to Section 361 of the Bankruptcy Code, the Debtors may provide adequate protection by making cash payments, providing additional or replacement liens, or other manners.

19. The Debtors and Banco Popular have negotiated and agreed upon the terms of adequate protection that will entitle the Debtors to use Banco Popular's Cash Collateral on a consensual basis, as detailed and pursuant to the terms described below:

- **Authorized Use of Cash Collateral**. Pursuant to this agreement, the Debtors shall be authorized to use the Cash Collateral solely to satisfy the permitted expenditures detailed and described and at the times set forth (the "Permitted Expenditures") in the budget (the "Budget", attached hereto as **Exhibit A**). The total authorized use of cash collateral for the period that commenced on July 1, 2010 and ending December 31, 2010 (the "Stipulation End Date") is shown in the attached exhibit. Banco Popular's consent to use of Cash Collateral and the Debtors' right to use the Cash Collateral shall terminate automatically on the Stipulation End Date. Further, nothing contained herein shall obligate Banco Popular to extend any use of the Cash Collateral beyond the Authorized Cash Collateral or the Stipulation End Date. Finally, the Debtors are not authorized to use the Cash Collateral beyond the Authorized Cash Collateral, for any expenditure other than the Permitted Expenditures, nor beyond the Stipulation End Date.

- **Adequate Protection - Replacement Liens**. Pursuant to Sections 361 and 363 of the Bankruptcy Code, as adequate protection for Banco Popular, the Debtors hereby grant to Banco Popular a replacement lien and a post-petition security interest on all of the assets and Collateral acquired by the Debtors from the Petition Date through the Stipulation Ending Date, as provided in the Loan Documents, as entered into pre-petition, to the same extent and priority, and on the same types of property, as Banco Popular's liens and security interests in the

pre-petition Collateral (the "Replacement Liens"). The Replacement Liens shall be deemed effective and perfected as of the Petition Date without the necessity of the execution or filing by the Debtors or Banco Popular of any additional security agreements, pledge agreements, financing statements or other agreements.

- **Additional Adequate Protection – Reporting Rights**. Pursuant to Sections 361 of the Bankruptcy Code, as additional adequate protection, the Debtors shall submit to Banco Popular weekly reports detailing: (a) the amount, aging, and description of all of the Debtors' accounts receivable, inventory and other cash collateral; (b) the amount of cash collateral collected and/or used to satisfy Permitted Expenditures; and (c) reorganization efforts (e.g. solicitation of bids, offers, discussions with potential acquirers, etc.) (collectively, the "Reports"). The Reports shall be submitted on Monday of each week, detailing the respective activities as of the end of the prior week.

- **Additional Adequate Protection - Sale Proceeds**. As additional adequate protection, the Debtors hereby agree that upon any consummation of any sale of substantially all of the Debtors' assets encumbered in favor of BPPR, and in any event, if not earlier paid, upon the effective date of any plan confirmed in the Bankruptcy Case, the proceeds of such sale or funding under such plan shall be paid immediately and indefeasibly to Banco Popular for its benefit in an amount equivalent to the total amount of the Loans, plus any post-petition interest and/or charges that may have accrued in accordance with the Bankruptcy Code.

- **Additional Adequate Protection - Section 506(c) Waiver**. As additional adequate protection, except as may be subsequently expressly agreed to in writing with Banco

Popular, each of the Debtors hereby covenant and agree to waive any and all rights under Section 506(c) of the Bankruptcy Code as to any of Banco Popular's Collateral.

- **Additional Adequate Protection - DIP Accounts**. As additional adequate protection, the Debtors will transfer their debtor-in-possession accounts (the "DIP Accounts") to Banco Popular and grant Banco Popular access to monitor such accounts and the payments and deposits made therein.

- **Ratification of Loan Documents**. Each of the Debtors hereby consents: (i) to the transaction contemplated herein and acknowledges, reaffirms, and ratifies all security interests granted and liens constituted pursuant to the Loan Documents as security for the payment and performance of all of the Debtors' obligations under the Loan Documents and their first priority rank; (ii) acknowledges and agrees that the guarantees (and all security therefor) contained in the Loan Documents are, and shall continue to remain, in full force and effect after giving effect to this Agreement; and (iii) ratifies the Financing Agreements, the guarantees and the other Loan Documents.

- **Ratification of Obligations**. Each of the Debtors, jointly and severally among themselves ("solidariamente"), acknowledges, represents, covenants, and agrees with Banco Popular that (i) the Debtors' obligation to pay in full the outstanding balance of principal of the Loans and any other sums due to Banco Popular including, without limitation, accrued interest under the Financing Agreements, is valid, binding and enforceable in all respects; (ii) the Debtors' obligations under the Financing Agreements, as well as any and all of their other obligations under any of the other Loan Documents (including, without limitation, the guarantees and this Stipulation) are valid, binding and enforceable in all respects; and (iii) the Debtors' obligations to

Banco Popular are absolute and unconditional, and – as of this date -- there exists no right of setoff or recoupment, counterclaim or defense of any nature whatsoever to payment or performance of any such obligations. Each of the Debtors' obligations to Banco Popular are not subject to any defenses, either in law or in equity, or otherwise, including without limitation, any offsets, claims or counterclaims against Banco Popular and any and all such defenses, offsets and claims are hereby expressly and forever waived and released. Each of the Debtors further acknowledges and affirms that Banco Popular – as of this date - has faithfully, and in good faith, performed and discharged all of Banco Popular's obligations under the Financing Agreements and the other Loan Documents.

- **Insurance**. The Debtors agrees to maintain adequate insurance on all of the Collateral from and after the Petition Date, and to (a) list Banco Popular as an additional insured and loss payee under the corresponding insurance policies, and (b) upon request, provide to Banco Popular evidence of such insurance (the "Insurance Obligation").

- **Continuing Obligation**. The Debtors' obligation to grant the Replacement Liens, Super-Priority Claim, and the Insurance Obligation and their representations, covenants and obligations under this Stipulation shall: (i) continue in full force and effect until all of the Debtors' obligations under the Loan Documents have been satisfied in full; and (ii) be binding upon any successor to the Debtors including, but not limited to, any Chapter 11 trustee or any trustee appointed in any Chapter 7 case of Debtors in the event of a conversion. Furthermore, the terms of this Stipulation shall be incorporated in full into any plan of reorganization or liquidation submitted

by any of the Debtors including, among others, the full payment of Banco Popular's allowed secured claims under the Bankruptcy Code. Further, such plan of reorganization shall provide and request that the Court shall retain jurisdiction to enforce the terms of this Stipulation.

- **Reservation of Rights**. Notwithstanding anything to the contrary contained in this Stipulation, Banco Popular shall have the right to seek any relief it deems necessary or appropriate before this Court including, but not limited to, a motion seeking (a) relief from the automatic stay upon any ground or cause in the event of a change in circumstances; and/or (b) adequate protection in addition to that provided for in this Stipulation in the event of a change in circumstances. Further, if at any time the Debtors fail to comply with any of their obligations or representations under any of the terms of this Stipulation, or if at any time the Cash Collateral diminishes by ten (10) percent or more in value as per the amounts stated in the Budget, Banco Popular shall have the right to: (a) terminate its consent to the use of Cash Collateral; (b) seek relief from the automatic stay to enforce its rights under the Loan Documents; and (c) seek any further relief it deems appropriate. The Debtors hereby consent to present no objection, upon an event of default as described herein, to Banco Popular's rights above to terminate its consent to the use of Cash Collateral and obtain relief from the automatic stay. In case of default and, before Banco Popular may act hereunder, it must give debtor a notice of default, with an opportunity to cure the default in 30 days.

- **Debtor in possession Financing**. Notwithstanding the agreements entered into in this stipulation, the Debtor reserves its right to seek and request Court approval of

debtor in possession financing, including the granting of super-priority liens to such financier above and beyond those granted to Banco Popular – and, Banco Popular reserves all of its rights to object and/or respond to any such request.

- **Carve-Out**. BPPR hereby consents to a carve-out for the payment of the fees of professionals duly approved by the Bankruptcy Court presiding over both above-captioned cases in an amount not to exceed $200,000. The respective fees shall be payable from the proceeds of any of the collaterals, including the cash collateral, upon the order from the Bankruptcy Court approving the same, after due notice to BPPR.

- **No Novation**. It is hereby understood and agreed by each of the parties hereto that this agreement is not intended to constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of the parties under any of the Loan Documents, as amended to date. Each of the Debtors hereby ratifies, reaffirms, confirms, consents to and acknowledges all the terms, priority and conditions of, security interest, mortgages or liens over the Collateral provided for in the Loan Documents and the Debtors' obligations under such documents.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 10th of September, 2010.

**NOTICE OF RESPONSE TIME**

Within twenty-one (21) days after service as evidenced by the certification, and additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the motion will be deemed unopposed and may be deemed automatically granted, unless: (i) the requested relief is forbidden by law; (ii) the

requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, including the U.S. Trustee, and that the business day after filing this document, copies will be sent to the 20 largest creditors appearing on the Master Address List by first class mail.

| | |
|---|---|
| **EDGARDO MUÑOZ, PSC**<br>*Attorneys for Debtor AAA Imports, Inc.*<br>PO Box 360971<br>San Juan, PR 00936-0971<br>Tel. (787) 524-3888<br>Fax (787) 524-3888<br><br>*s/Edgardo Muñoz*<br>Edgardo Muñoz<br>USDC NO. 125713<br>emunoz@emunoz.net<br><br>**C. CONDE & ASSOC.**<br>*Attorneys for Debtor Carian Management, Inc.*<br>254 San José Street, 5th Floor<br>Old San Juan, Puerto Rico 00901<br>Telephone: 787-729-2900<br>Facsimile: 787-729-2203<br><br>*s/Carmen Conde Torres*<br>Carmen Conde Torres, Esq.<br>USDC 207312<br>condecarmen@microjuris.com | **O'NEILL & BORGES**<br>*Attorneys for Banco Popular de Puerto Rico*<br>American International Plaza<br>250 Muñoz Rivera Avenue,<br>Suite 800<br>San Juan, Puerto Rico 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*s/Luis C. Marini*<br>Luis C. Marini<br>USDC No. 222301<br>Luis.Marini@oneillborges.com<br><br>*s/Ubaldo M. Fernández*<br>Ubaldo M. Fernández<br>USDC No. 224807<br>Ubaldo.Fernandez@oneillborges.com |