# CONTRATO DE PRESTAMO

En el lugar y fecha indicados al final.

## COMPARECEN

DE LA PRIMERA PARTE: **EL BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO**, una institución bancaria del Estado Libre Asociado de Puerto Rico creada por la Ley Número 22 del 24 de julio de 1985, según enmendada, con número de seguro social patronal 66-0425168, representado en este acto por sus Oficiales Autorizados, Ivonne Otero Guzmán, también conocida como Ivonne Otero, mayor de edad, casada, ejecutiva y vecina de Guaynabo, Puerto Rico y Marcos Luis de la Villa Rodríguez, también conocido como Marcos de la Villa, mayor de edad, casado, ejecutivo y vecino de Dorado, Puerto Rico quienes aseguran estar debidamente autorizados para representarle y se obligan a mostrar tal autoridad donde y cuando fuere necesario, de aquí en adelante denominado como el "**BANCO**".

DE LA SEGUNDA PARTE: **AAA IMPORTS, INC.**, corporación debidamente registrada para hacer negocios dentro del Estado Libre Asociado de Puerto Rico, representada por su Oficial Autorizado (Vice-Presidente), **ANDRES JOSE MARTINEZ QUIÑONES**, mayor de edad, casado, comerciante y vecino de San Juan, Puerto Rico, en adelante denominada, individual y colectivamente, mancomunada y solidariamente, como el "**DEUDOR**".

DE LA TERCERA PARTE: **ANDRES JOSE MARTINEZ QUIÑONES** y **DOLORES SERVINO ALVEZ**, t/c/c **DOLORES SERVINO MARTINEZ**, mayores de edad, casados entre sí, comerciantes y vecinos de San Juan, Puerto Rico. El primero comparece además, en representación de **ORLANDO ADROVET MOLINA** y **SANDRA MONTAÑEZ VELEZ**, mayores de edad, casados entre sí, comerciantes y vecinos de Trujillo Alto, Puerto Rico, mediante Poder Especial instituido en la escritura número Dos (2) otorgada el quince (15) de noviembre de dos mil diez (2010), ante el Notario, Héctor Edgardo Calle Ortiz, en San Juan, Puerto Rico, y **CARIAN MANAGEMENT, INC.**, corporación debidamente registrada para hacer negocios dentro del Estado Libre Asociado de Puerto Rico, representada por su Oficial Autorizado, **ANDRES JOSE MARTINEZ QUIÑONES**, mayor de edad, casado, comerciante y vecino de San Juan, Puerto Rico en adelante denominados todos, individual y colectivamente, mancomunada y solidariamente, como "**GARANTIZADOR SOLIDARIO**".

## EXPONEN

**PRIMERO**: Que el DEUDOR ha solicitado al BANCO, y el BANCO le ha autorizado al DEUDOR, una línea de crédito no rotativa (préstamo), por la cantidad de **NOVECIENTOS OCHENTA MIL DOLARES (US$980,000.00)**, para compra de inventario.

## ARTICULO I

### DEFINICIONES

Sección 1.01 **Definiciones**. Según se utilizan en este Contrato, las siguientes palabras y términos tendrán los respectivos significados que se detallan en adelante, excepto cuando el contexto en que se utilicen indique lo contrario:

"**BANCO**" y/o "**BDEPR**" se refiere al Banco de Desarrollo Económico para Puerto Rico.

"**Contrato**" se refiere a este Contrato de Préstamo.

"**DEUDOR**" se refiere a la o las personas o entidades mencionadas en el párrafo SEGUNDO de la comparencia.

"**Día Laborable**" significa cualquier día del año que no sea un sábado, domingo o día feriado oficial bajo las leyes del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América.

"**Documentos de Préstamo**" se refiere a este Contrato, el o los Pagarés, y todo y cualquier documento emitido u otorgado relacionado al Préstamo o Línea de Crédito.

"**Fecha de Cierre**" se refiere a la fecha de la firma de este Contrato de Préstamo.

"**Pagaré**" se refiere colectiva e indistintamente, al pagaré o pagarés por la suma de novecientos ochenta mil dólares ($980,000.00), suscrito por el DEUDOR a la orden del BANCO como evidencia de

1

las sumas adelantadas por el BANCO al DEUDOR en concepto del Préstamo o Línea de Crédito según sea el caso. Puede referirse además, a cualquier otro Pagaré, de cualquier tipo, que se emita u otorgue como resultado o requerimiento de este Contrato de Préstamo.

"**Préstamo**" se refiere indistinta y colectivamente, a los préstamos a término o a la o las líneas de crédito concedidos por el BANCO al DEUDOR bajo los términos de este Contrato de Préstamo, según se detalla en el Artículo III de este Contrato de Préstamo.

"**Tasa de Interés Aplicable**" se refiere a la tasa de interés anual variable o fija aplicable al Préstamo descrita en la Sección 3.02 (c) de este Contrato de Préstamo.

"**Tasa Primaria**" el promedio de las tasas de interés base anunciadas de tiempo en tiempo por los principales Bancos de la ciudad de Nueva York, Nueva York, Estados Unidos de América, para préstamos comerciales, según publicada en periódicos de circulación general como The Wall Street Journal, la cual no necesariamente, se debe entender como la más baja o la mejor tasa de interés cargada sus clientes. Disponiéndose, que de publicarse más de una de dichas tasas en la misma fecha, prevalecerá de éstas para efectos del Contrato la más alta que legalmente, pueda cargarse al DEUDOR de conformidad con las leyes y reglamentos que le sean aplicables. Los cambios periódicos en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa primaria sujeto a la reglamentación aplicable.

## ARTICULO II

### REPRESENTACION Y GARANTIAS

Sección 2.1 **Representaciones y Garantías del DEUDOR**. El DEUDOR, representa y garantiza al BANCO que:

a. El DEUDOR no adeuda contribuciones al Gobierno del Estado Libre Asociado de Puerto Rico ni al Gobierno de los Estados Unidos de América, o de tenerlas tiene plan de pago firmado o en proceso de firma y así se lo ha informado al BANCO.

b. El otorgamiento y cumplimiento de este Contrato, (i) no viola ninguna ley, reglamento, orden judicial, interdicto o sentencia, (ii) ni constituye un incumplimiento o violación de cualquier otro contrato, obligación, préstamo o acuerdo del cual el DEUDOR es parte ni afecta de otra forma las propiedades o el negocio del DEUDOR o las propiedades ofrecidas en garantía del Préstamo.

c. Fuera de la Orden de *Superpriority* dictada por el tribunal de Quiebras para el Distrito de Puerto Rico, no es necesaria la autorización, consentimiento, licencia, permiso, registro o presentación ante cualquier corte, agencia, junta, instrumentalidad gubernamental, doméstica o foránea, para el otorgamiento y cumplimiento de este Contrato;

d. No existe contra el DEUDOR acción, demanda o reclamación alguna ante ningún Tribunal o instrumentalidad gubernamental, doméstica o foránea alguna, ni de acuerdo con su mejor conocimiento, posibilidad de tal, que pudiera afectar la condición financiera o afectar las propiedades o activos del DEUDOR o las propiedades ofrecidas en colateral.

e. Ninguna información, documento, anejo o informe ofrecido al BANCO por el DEUDOR, con relación a la preparación y negociación de este Contrato, contiene falsas representaciones u omite el declarar algún o cualquier hecho que pueda afectar la veracidad de dicha información y no existen hechos en conocimiento del DEUDOR que individualmente, o en combinación con otros factores, pudiese afectar adversamente las propiedades, futuro o la situación del DEUDOR, financiera u otra ni de las propiedades que garantizan el Préstamo.

f. El DEUDOR tiene todos los permisos, licencias y franquicias necesarias para operar sus negocios, tiene plena capacidad para otorgar este Contrato, para incurrir en las obligaciones que se proveen en este Contrato, a tomar prestado las cantidades que se detallan en el Contrato, a emitir el Pagaré para evidenciar dichas obligaciones, a utilizar los fondos obtenidos bajo el Préstamo para los usos aquí especificados, y para cumplir con los términos y condiciones correspondientes contenidos en este Contrato y el Pagaré a ser cumplidos por el DEUDOR y, bajo ningún concepto, está limitado a llevar a cabo lo acordado en este contrato y sus documentos complementarios.

g. El DEUDOR tiene plena capacidad para otorgar este Contrato, para incurrir en las obligaciones que se proveen en este Contrato, a tomar prestado las cantidades que se detallan en el Contrato, a emitir el Pagaré para evidenciar dichas obligaciones, utilizar los fondos del Préstamo para los usos aquí especificados, y para cumplir con los términos y condiciones

correspondientes contenidos en este Contrato, el Pagaré y los demás Documentos de Préstamo.

h. El Contrato, el Pagaré y demás Documentos de Préstamo han sido autorizados, otorgados y entregados y constituyen la obligación válida y legal del DEUDOR de acuerdo con sus respectivos términos.

i. No existe hipoteca, prenda, embargo, o cualquier otra carga o gravamen (incluyendo el gravamen o el título del vendedor bajo una venta condicional) sobre las propiedades o bienes ofrecidos en garantía del Préstamo, salvo aquellas notificadas y aceptadas por el BANCO antes de la firma de este contrato, por lo que asegura que el BANCO obtendrá y permanecerá en los rangos acordados para otorgar este financiamiento.

j. El DEUDOR opera con el nombre y razón social que ha informado y representado al BANCO y, de operar con otro nombre o razón social, así lo ha informado al BANCO antes de la firma de este contrato. De igual manera, el DEUDOR representa y garantiza que no ha sido objeto de cambio de nombre, o transferencia de titularidad, o de cambio de socios, o de transferencia de acciones, bienes y haberes, ni es subsidiaria de ni afiliada a otra empresa, sea corporación o sociedad o de cualquier tipo, y de así haber ocurrido cualquiera de esos eventos lo ha informado al BANCO antes de la firma de este contrato.

k. El DEUDOR no ha o no tiene conocimiento de que cualesquiera de sus predecesores en interés, hubiera almacenado, dispuesto, generado, manufacturado, refinado, transportado, producido o tratado desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas en las propiedades del DEUDOR, en violación de cualquier disposición de ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso, que fuera aplicable y que requiera una acción remediativa, a un costo o gasto sustancial o material, bajo las disposiciones de cualquier ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable. El DEUDOR certifica que no tiene conocimiento de que hayan ocurrido derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del DEUDOR o en el ambiente que rodea dichas propiedades, atribuible al o causado por el DEUDOR o con relación al cual el DEUDOR tenga conocimiento. Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley, reglamentación local, estatal, o federal o foránea, aplicable en la jurisdicción del Estado Libre Asociado de Puerto Rico, de aplicación con relación a la protección del ambiente. El DEUDOR expresamente, releva y acuerda indemnizar al BANCO por los daños que pueda sufrir o incurrir el BANCO como resultado de cualquier incumplimiento del DEUDOR con esta cláusula.

l. El DEUDOR no ha ocasionado o no tiene conocimiento de que hayan ocurrido, derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del DEUDOR o en el ambiente que rodea dichas propiedades, atribuible al o causado por el DEUDOR o con relación al cual el DEUDOR tenga conocimiento. Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley, reglamentación local, estatal, o federal o foránea, aplicable a la jurisdicción del Estado Libre Asociado de Puerto Rico, y de aplicación con relación a la protección del ambiente. El DEUDOR expresamente, releva y acuerda indemnizar al BANCO por los daños que pueda sufrir o incurrir el BANCO como resultado de cualquier incumplimiento del DEUDOR con esta cláusula.

m. De aplicarse al DEUDOR las disposiciones de la ley federal conocida como ERISA ("Employee Retirement Income Security Act of 1974"), según enmendada, el DEUDOR representa y garantiza que ha cumplido cabalmente, con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable ("Reportable Event") según se define en ERISA con respecto a cualquier plan de retiro o pensiones del DEUDOR que esté reglamentado por ERISA.

## ARTICULO III

### PRESTAMO

Sección 3.01 **El Préstamo**. Sujeto a los términos y condiciones de este Contrato y de aquellos otros contenidos en la Carta Compromiso del BANCO fechada 29 de octubre de 2010, y sus enmiendas, las cuales forman parte integral de este Contrato, el BANCO acuerda conceder a favor del

3

DEUDOR, un financiamiento por la suma total de **NOVECIENTOS OCHENTA MIL DOLARES (US$980,000.00)**, bajo una línea de crédito no rotativa, a vencerse el 1 de febrero de 2011. El propósito del préstamo será para compra de inventario.

Sección 3.02. **Condiciones del Préstamo**.

a. *Pagaré; Desembolsos*. El Préstamo será evidenciado por un Pagaré, el cual deberá ser de forma y sustancia aceptable al BANCO e incluir la forma y cantidad del repago del Préstamo de acuerdo a los términos y condiciones de este Contrato.

El BANCO desembolsará al DEUDOR para los siguientes propósitos:

(I) **COMPRA DE INVENTARIO**

El desembolso de la línea de crédito se efectuará contra la presentación de facturas originales cuando el pago se haga al suplidor y al DEUDOR, o contra la presentación de factura original y cheque cancelado cuando el pago se realice por reembolso de gastos incurridos por el DEUDOR. No se efectuarán pagos menores de Mil dólares ($1,000.00). No se reembolsará factura en efectivo mayor de mil dólares ($1,000.00).

Cualquier exceso en los costos del proyecto será cubierto por el DEUDOR. En la eventualidad de que el costo final del proyecto sea menor de $980,000.00, el préstamo se reduciría por la diferencia resultante.

No se harán desembolsos por concepto de servicios profesionales, los cuales a tenor con la Ley de Contribución sobre Ingresos requieren de la retención del siete por ciento (7%) en el origen. Sólo se harán los que se provean con el decreto vigente de exención del cien por ciento (100%) del Departamento de Hacienda o los que por ley no estén sujetos a retención. En ambos casos, la factura deberá contener el número del seguro social del proveedor del servicio, su nombre y dirección legible.

**Los desembolsos están sujetos a un cargo adicional por el BANCO, por concepto de manejo**, no reembolsable, equivalente al punto veinticinco por ciento (.25%) del importe total de la línea de crédito, o sea, Dos mil cuatrocientos cincuenta dólares ($2,450.00), pagaderos al momento del cierre.



Las partes acuerdan que entre los requisitos indispensables a cumplirse para que el BANCO pueda realizar desembolsos para los antedichos propósitos, se encuentran los siguientes: (i) En el supuesto de que el DEUDOR presente para el pago una factura original que no ha sido pagada aún, el BANCO, si aprobare el desembolso, lo realizará mediante cheque girado a nombre del DEUDOR y del suplidor que generó la factura presentada, salvo que el BANCO autorice otra manera de pago; (ii) En el supuesto de que el DEUDOR presente para el pago una factura original que ha sido pagada por el DEUDOR, el DEUDOR deberá presentar además el cheque que evidencia el pago debidamente pagado por el BANCO o institución financiera contra la cual fue girado, y si el BANCO aprobare el desembolso, lo realizará mediante cheque girado a nombre del DEUDOR; (iii) El BANCO no realizará desembolsos por concepto de servicios profesionales cuyo pago requiera la retención de dineros, sea el por ciento que sea, del mismo en el origen; (iv) El BANCO realizará desembolsos por concepto de servicios profesionales cuyo pago no requiera la retención de un por ciento del mismo en el origen, siempre y cuando el BANCO aprobare el desembolso y la factura que someta el DEUDOR contenga el nombre completo, número de seguro social y direcciones física y postal del proveedor del servicio, (v) Cumplimiento total con las representaciones hechas en la solicitud del préstamo, incluyendo la documentación suplementaria sometida con la misma, todas las condiciones detalladas en la presente, así como cualquier otra condición legal o reglamentaria que pueda imponer el BANCO en el futuro, (vi) La determinación del BANCO, a su entera discreción, de que no han ocurrido cambios sustanciales en las condiciones financieras u otras del deudor y/o sus garantizadores solidarios a partir de la fecha la fecha de la solicitud o de la fecha del último desembolso, (vii) el DEUDOR debe adscribirse al método de pago directo de su préstamo, (viii) El financiamiento deberá ser considerado por el Tribunal de Quiebras como "Superpriority" ante los demás acreedores.

b. *Forma de Pago*. El término de la línea de crédito no rotativa será desde el día de la firma de este documento hasta el 1 de febrero de 2011. Pagará intereses mensualmente y consecutivamente a base del principal adeudado. Además del pago de intereses mensuales y consecutivos aquí pactados, se harán abonos parciales al principal, disponiéndose que, en o antes del día 15 de enero de 2011, el DEUDOR realizará un pago al principal de Cuatrocientos Mil dólares ($400,000.00). El balance insoluto de la línea de crédito será pagadero en su totalidad a la fecha de vencimiento de la misma, o sea, el primero (1) de febrero de dos mil once (2011). El interés se computará a base del balance vigente de principal del préstamo, tomando como base un año de trescientos sesenta (360) días.

c. *Tasa de Interés Aplicable*. La Tasa de Interés Aplicable en la facilidad de crédito será a un tipo de interés variable, equivalente al **Dos por ciento (2%)**, sobre la tasa de interés preferente

4

*(prime rate)*. No obstante, **el límite mínimo de interés a cobrar será de siete por ciento (7%)**. Se tomará como base la tasa de interés preferente determinada de tiempo en tiempo por Citibank, NA. El interés se pagará mensualmente, y se computará a base del balance vigente de principal del préstamo, tomando como base un año de trescientos sesenta (360) días. El tipo de interés se revisará cada vez que cambie la tasa de interés preferente fluctuante *(prime rate)*.

Si en cualquier momento durante la vigencia del Préstamo la situación financiera del Deudor, según la misma se refleje en sus más recientes estados financieros, tomara un giro negativo debido a pérdidas en sus operaciones, insuficiencia en el flujo del efectivo necesario para cumplir con sus obligaciones y otras condiciones adversas, o de no entregar los estados financieros o de no adscribirse al pago directo o de ocurrir cualquier causa de incumplimiento, y el Banco opte por no acelerar el vencimiento del Préstamo, el Banco podrá, a su opción, aumentar la Tasa de Interés Aplicables en dos (2) puntos porcentuales sobre la Tasa de Interés originalmente acordada (Tasa de Interés por Incumplimiento). Esta tasa de interés por Incumplimiento se aplicará desde el momento en que ocurra cualquiera de los eventos antes mencionados hasta que sean subsanados en forma y sustancia a la entera satisfacción del BANCO.

Disponiéndose que, de subsanarse dicho incumplimiento la tasa de interés del Préstamo revertirá a partir de la fecha de subsanación del incumplimiento a la tasa originalmente acordada. Disponiéndose, además, que si el Banco extendiera una moratoria al Deudor en el pago de principal y/o intereses bajo el Préstamo, o la fecha de vencimiento del Préstamo fuera extendida el Banco podrá entonces cargar al Deudor por concepto de dicho compromiso un cargo equivalente a dos por ciento (2%) del balance entonces adeudado del Préstamo.

Según autorizado, el Banco se reserva el derecho de implementar o no a su sola opción aumentos en el tipo de interés inicial o subsiguiente permisibles con relación a el Préstamo y aunque deje de implementar cualquier aumento en el tipo de interés anual de este Préstamo, ello en ninguna forma significará una renuncia de su parte a implementar ajustes por aumentos en fechas futuras.

d. **_Vencimiento_**. El principal e interés del Pagaré serán pagaderos a la orden del BANCO en la fecha de vencimiento antes expresada, cualquiera que ésta sea, en fondos de obtención inmediata y en moneda legal de los Estados Unidos de América, en la dirección provista bajo su firma en este documento o en cualquiera otra que el BANCO especifique por escrito al DEUDOR.



e. **_Prepago_**. El DEUDOR podrá prepagar este préstamo parcial o totalmente, utilizando fondos que provengan directa o indirectamente de otras instituciones financieras que no sea el Banco de Desarrollo Económico para Puerto Rico. El DEUDOR, al momento de realizar un prepago, no tendrá penalidades.

De igual manera no aplicarán penalidades por concepto de prepago antes descritas, si la prestataria vende el negocio y/o las propiedades muebles o inmuebles que por razón del otorgamiento del préstamo sirvan de colateral.

f. **_Cargo por Demora_**. El DEUDOR pagará al BANCO un cargo por demora equivalente a tres por ciento (3%) del montante de cada plazo que no haya sido satisfecho dentro de los diez (10) días siguientes a su fecha de su vencimiento. El pago de dicho cargo no relevará al DEUDOR de cualesquiera otras consecuencias de su incumplimiento. El BANCO podrá, además, conforme a los términos del Contrato imponer intereses en mora.

No obstante lo dispuesto en cualquier cláusula de este Contrato, el pago de cargos no será exigible si el recibo de todo o parte de dicho pago por parte del BANCO resultare contrario a las leyes o reglamentos.

Sección 3.03. **Comisión y otros Cargos por Compromiso**: El DEUDOR pagará un cargo por compromiso, **no reembolsable**, equivalente al **uno punto veinticinco por ciento (1.25%)** del importe total del financiamiento, o sea, **doce mil doscientos cincuenta dólares ($12,250.00)**. Esta cantidad deberá pagarse al momento de aceptación de la carta compromiso, en o antes de quince (15) días a partir de la fecha de dicha carta.

Sección 3.04. **Colateral y Garantías**. Como evidencia y/o colateral para garantizar las obligaciones del DEUDOR bajo este Contrato, incluyendo sin limitarse, el pago del principal del Préstamo y sus intereses, cualquier otro anticipo o desembolso hecho por el BANCO bajo este Contrato, más la suma líquida pagada para costas, gastos y honorarios de abogados, el DEUDOR entregará al BANCO las siguientes colaterales y garantías:

a) Garantizadores solidarios serán los señores <u>Andrés Martínez Quiñones, Dolores Servino Martínez, Orlando Adrovet Molina, Sandra Montañez Vélez</u>, y la corporación, <u>Carian Management, Inc</u>.

b) El financiamiento deberá ser considerado por el Tribunal de Quiebras para el Distrito de

5

Puerto Rico como un *Superpriority* ante los demás acreedores. A esos efectos, el DEUDOR ha presentado una Orden de ese Tribunal, del 9 de noviembre de 2010, en el caso 10-04048 (BKT), consolidado con el caso número 10-04052 (BKT), Docket # 209, concediendo dicha super-prioridad.

c) Durante la vigencia del préstamo, deberá someter el Plan de Reorganización aprobado por el Tribunal de Quiebras para el Distrito de Puerto Rico en el caso mencionado en el inciso anterior.

No se permitirá la venta, transferencia, enajenación y/o gravamen (*Negative Pledge on Assets*) de las propiedades inmuebles o muebles del negocio, sin el consentimiento previo y por escrito del BANCO.

Sección 3.05. **Cesión de Colateral**. El BANCO tendrá el derecho absoluto de vender o ceder a cualquier otro BANCO, fideicomiso o institución, toda o cualquier parte del Préstamo. Además, el BANCO podrá constituir, a su opción, cualquier gravamen sobre cualquier colateral que garantice el pago del Préstamo para fines de levantar fondos para cumplir, si necesario, con los términos y condiciones de este Contrato.

## ARTICULO IV

### INCUMPLIMIENTO

Sección 4.01. **Eventos de Incumplimiento**. Cada una de las siguientes de por sí constituirá una causa de incumplimiento bajo los términos de este Contrato:

a. Si cualquier representación o manifestación hecha por el DEUDOR al BANCO en este Contrato o en cualquiera de los Documentos del Préstamo, o si cualquier documento o información provista al BANCO por cualquiera de ellos con relación al Préstamo o a este Contrato resultare falsa o engañosa a la fecha en que se rindiese o extendiere el mismo; o

b. La falta de pago de cualquiera de los plazos de principal o de intereses del Préstamo, y sus penalidades, si alguna, a su fecha de vencimiento, o por declaración del BANCO o por aceleración, de acuerdo con los términos de este Contrato y cualquiera de los otros Documentos del Préstamo relacionados con el Préstamo; o

c. El incumplimiento a su vencimiento por el DEUDOR de cualquier deuda u obligación, no relacionada con, e independiente del Pagaré, o en el cumplimiento, realización, o ejecución de cualquier obligación incurrida o asumida en relación con cualquier otro préstamo si el efecto de tal incumplimiento produce la aceleración del plazo de dicha obligación, permitiendo así al acreedor de tal otra obligación declarar la misma vencida antes de su plazo según pactado, o la falta de pago a su vencimiento de toda obligación o deuda; o

d. El incumplimiento por el DEUDOR en la relación o ejecución o violación de cualquiera de los términos, cláusulas y condiciones pactadas en este Contrato; o

e. El incumplimiento del DEUDOR con cualquiera de los términos, cláusulas y condiciones pactadas o acordadas en contratos de préstamos con cualquier tercero; o

f. Si el DEUDOR llegare a ser insolvente; o se viere imposibilitado de pagar, o no pagare sus deudas a medida que éstas venzan; o voluntariamente, radicare una petición de quiebra para liquidarse, o, solicitare alivio a sus deudas u obligaciones al amparo de cualquier ley; o, radicare una contestación, o prestare su consentimiento a cualquier procedimiento de insolvencia, reorganización, o alivio a sus deudas; o, se viere envuelta en un procedimiento de quiebra involuntaria radicada por sus acreedores en su contra; o, si fuere adjudicada en quiebra; o, si se decretase su insolvencia por cualquier corte o jurisdicción sobre la materia; o, si cediere sus bienes a sus acreedores o a un agente de éstos; o, si no afianzare o lograre la desestimación, embargo o procedimiento de quiebra voluntaria o de sindicatura en su contra en un plazo de treinta (30) días contados a partir de la fecha de su radicación; o, si suspendiere operaciones por más de treinta (30) días, o, si descontinuare permanentemente sus operaciones como negocio en marcha; o,

g. Si se instituyere un procedimiento de ejecución de cualquier gravamen, carga o derecho sobre las propiedades que garantizan el Préstamo y que tenga prioridad sobre éste en paridad o tenga rango subordinado con el gravamen que asegura el pago de este Préstamo; o

h. Si el DEUDOR fuere privada por cualquier motivo de todo o parte de su título de propiedad sobre la propiedad que garantiza el Préstamo, excepto por expropiación forzosa; o

6

i. Si cualquier tribunal con jurisdicción sobre la materia asumiere control y pusiere bajo custodia judicial los activos o los bienes del DEUDOR, cualquier parte de los mismos, y tal control o custodia judicial continuare en efecto por más de treinta (30) días; o,

j. Si en contra del DEUDOR pesare una sentencia final y firme por una suma que fuese igual o excediere del diez por ciento (10%) de la suma principal del Préstamo y la misma no fuere satisfecha en la fecha en que la misma adviniere a ser final y firme; o;

k. La omisión por el DEUDOR de procurar, obtener y mantener en vigor cualquier aprobación gubernamental que le sea requerida para la operación continua e ininterrumpida de sus actividades de negocio, incluyendo pero sin limitarse a, exenciones contributivas; o,

l. Toda venta, cesión, permuta, traspaso o enajenación del título de propiedad de la propiedad que garantiza el Préstamo a cualquier tercero, sin el previo consentimiento por escrito del BANCO; o si hipotecare o gravase dicha propiedad en favor de cualquier tercero, sin el previo consentimiento por escrito del BANCO; o si se iniciare cualquier procedimiento de ejecución de hipoteca sobre dicha propiedad;

m. Si el DEUDOR cesa operaciones comerciales, o de negocios; o

n. Si el DEUDOR en los casos en que se trate de una corporación o una sociedad, pierde su existencia corporativa o social o violare cualquier disposición legal, contributiva o de cualquier forma, referente a las corporaciones o SOCIEDADES, Según sea el caso, o dejare de radicar a su vencimiento cualquier informe que por ley le fuere requerido;

o. Si los gobiernos de los Estados Unidos de América o del Estado Libre Asociado de Puerto Rico le radicaren una imposición contributiva final y firme al DEUDOR que afectare la posibilidad de éste de cumplir con sus obligaciones; o

p. Si cualquier tribunal competente con jurisdicción sobre la materia emitiere una orden de entredicho, ("injunction") provisional o permanente contra el DEUDOR prohibiendo las operaciones del negocio; o

q. Si se emitiese una orden de embargo contra la propiedad que garantiza el Préstamo; o

r. Si el DEUDOR omitiere el pago a su vencimiento de cualquier contribución o de cualquier prima de seguro que le requiera el BANCO; o rehusare asegurar sus propiedades según se le requiera por el BANCO; o

s. La omisión por el DEUDOR en remediar o curar dentro de un plazo de treinta (30) días del conocimiento de la ocurrencia, sin notificación previa escrita por parte del BANCO, aquel incumplimiento a los términos, cláusulas y condiciones de este Contrato o de cualquiera de los documentos legales no relacionados con las obligaciones de pago al Préstamo, ya que éstas deberán cumplirse estrictamente con el pago a su vencimiento según pactado sin período de gracia alguno.

t. Una violación o incumplimiento de los términos y condiciones de cualesquiera de otros financiamientos vigentes con el BANCO o cualquier otra institución, constituirá también una violación o incumplimiento con los términos y condiciones de este préstamo y deberá ser informado por escrito al BANCO inmediatamente.

u. La violación e incumplimiento de cualquiera o cualesquiera de las condiciones incluidas en la carta de compromiso de préstamo emitida por el banco, o sus enmiendas y modificaciones.

Sección 4.02. **Remedios ante Incumplimiento**. Ante la ocurrencia de cualquiera de las causas de incumplimiento enumeradas en la Sección 4.01 de este Contrato, y si tal incumplimiento no es salvado, curado o remediado, según expresado en el párrafo "s" de la Sección 4.01 anterior, sin que sea necesario que medie notificación alguna al DEUDOR en cumplimiento, y sin que sea necesario presentación, protesto, demanda notificación o aviso por falta de pago o incumplimiento alguno, a cuyos derechos el DEUDOR mediante el presente otorgamiento renuncian, el BANCO podrá:

a. Acelerar el vencimiento del Pagaré y declarar el Préstamo vencido y pagadero en su totalidad.

b. Proceder a reclamar al DEUDOR el pago del balance insoluto del Préstamo y ejecutar todo gravamen o hipoteca que garantice su pago por la vía sumaria u ordinaria, hasta lograr la venta en pública subasta de los bienes que garantizan el préstamo, u otros bienes del DEUDOR.

c. Radicar cualquier procedimiento judicial solicitando bien sea el cumplimiento específico de este Contrato, o de cualquiera de los Documentos de Préstamo, o solicitar un entredicho ("injunction") para impedir que el DEUDOR viole cualquiera de dichos términos, cláusulas y condiciones, o

d. Iniciar procedimientos judiciales para tomar posesión de, y operar y administrar por medio de un síndico mediando orden de los tribunales el negocio del DEUDOR o la propiedad que garantiza el Préstamo y cobrar por conducto de dicho síndico cualquier renta, ingreso o beneficio que el negocio o dicha propiedad produzcan; o

e. Ejercitar cualquier otro remedio a que tenga el BANCO en derecho o en equidad bajo las leyes del Estado Libre Asociado de Puerto Rico.

Sección 4.03. **Remedios Acumulativos**. Los remedios y derechos concedidos a, o reservados para el BANCO no se considerarán exclusivos de cualquier otro remedio o remedios disponibles; todos y cada uno de dichos remedios serán acumulativos y concurrentes y serán en adición a cualquier otro remedio especificado en este Contrato o existente en Ley, equidad o estatutariamente. Cualquier demora u omisión en el ejercicio de cualquier derecho o acción que tenga el BANCO por razón del incumplimiento del DEUDOR, o la omisión de insistir en el cumplimiento estricto de cualquiera de los acuerdos y obligaciones que se detallan en este Contrato, o a ejercitar cualquier derecho y/o remedio en caso de incumplimiento por el DEUDOR, no afectará ninguno de los antedichos derechos o acciones, no se considerarán o se tendrán por renuncia o relevo de los derechos a insistir o hacer cumplir por interdicto o cualquier otro remedio apropiado, en Ley o equidad, cumplimiento estricto por el DEUDOR con todas las obligaciones, compromisos, acuerdos y condiciones aquí contenidas, o con el derecho a ejercer cualquiera de dichos derechos o remedios si se repitiera el incumplimiento por parte del DEUDOR.

Sección 4.04. **Notificación no es Necesaria**. Para que el BANCO pueda ejercer cualquier de los remedios disponibles, no será necesaria notificación o aviso además de los que se especifiquen en este Contrato, si alguno.



Sección 4.05. **Relevo de Incumplimiento**. En caso de que cualquier obligación, compromiso o acuerdo contenido en este Contrato, en el Pagaré o en cualquiera de los Documentos de Préstamo sea violado o incumplido por cualquiera de las partes, la parte afectada podrá, a su entera opción, relevar a la otra parte de dicho incumplimiento. En todo caso, dicho relevo deberá ser por escrito y se limitará a la violación o evento en particular y no constituirá, bajo ninguna circunstancia, una renuncia de la parte que emite el relevo para declarar un incumplimiento ante la ocurrencia de un nuevo evento de incumplimiento, de igual o diferente naturaleza.

Sección 4.06. A efectos de acciones judiciales, el DEUDOR y se compromete a someterse a la jurisdicción y competencia del Tribunal Superior de San Juan de Puerto Rico.

## ARTICULO V

## CONDICIONES ANTECEDENTES

Sección 5.01. **Condiciones Antecedentes al Préstamo**. El BANCO no estará obligado a desembolsar dineros del Préstamo de acuerdo a este documento a menos que en o antes de la Fecha de Cierre, haya recibido en forma y contenido satisfactoria la Colateral descrita en la Sección 3.05 anterior y cualquier otra información, pago o documentación requeridos en la Carta Compromiso del BANCO.



## ARTICULO VI

## ESTIPULACIONES

Sección 6.01. **Estipulaciones Afirmativas del DEUDOR**. Mientras se mantengan vigentes las obligaciones del DEUDOR, según sea aplicable, se comprometen como sigue:

a) A reembolsar al BANCO por los gastos incurridos por concepto de gastos legales, costos de tasación, auditoria, seguros, consultoría y otros gastos que sean necesarios en la administración del préstamo. Estos gastos serán notificados al DEUDOR cuando se vayan a incurrir.

b) A mantener un sistema de contabilidad conforme a las prácticas de contabilidad generalmente, aceptadas y a permitir al BANCO o a su representante autorizado a inspeccionar o auditar sus

8

libros de contabilidad. A mantener en todo momento en Puerto Rico los libros de registro y cuentas de todas las transacciones y operaciones del DEUDOR, conforme a las prácticas de contabilidad generalmente aceptadas, y proteger adecuadamente dichos libros para evitar su pérdida o destrucción.

c) A proveer al BANCO, anualmente, no más tarde de ciento veinte (120) días de la fecha de cierre de libros, Estados Financieros Auditados, conjuntamente con una certificación del DEUDOR declarando que no ha ocurrido incumplimiento alguno y que ningún evento mediante notificación o el transcurso del tiempo podrá convertirse en incumplimiento bajo los términos de este Contrato, del Pagaré o de los demás Documentos de Préstamo, o si de hecho ha ocurrido un incumplimiento, un detalle explicando la naturaleza del mismo y las medidas tomadas por el DEUDOR para corregirlo. Dichos estados financieros deberán estar preparados de acuerdo con los principios de contabilidad generalmente, aceptados y prácticas aplicadas consistentemente.

d) El DEUDOR se compromete, además, a someter Estados Financieros Interinos, semestralmente, no más tarde de treinta (30) días de la fecha de cierre.

e) A proveer al BANCO estados financieros, según sean solicitados por el BANCO, de todos los garantizadores solidarios del préstamo.

f) El DEUDOR autoriza al BANCO a requerir directamente de los auditores los estados financieros del DEUDOR, si éste no los proveyera al BANCO, según aquí acordado, o a realizar una inspección interna periódicamente. Esta autorización no releva al DEUDOR de su responsabilidad de rendir dichos informes. Conjuntamente con los estados dispuestos en este inciso, se proveerá una certificación suscrita por el Presidente o el Oficial a cargo de las finanzas, al efecto de que no ha ocurrido ninguna de las causas de incumplimiento especificadas en la Sección 4 de este Contrato y ningún suceso o hecho en relación con el cual su notificación o el mero transcurso del tiempo, o ambas puedan constituir una causa de incumplimiento.

g) El DEUDOR, se compromete a proveer al BANCO aquellos estados financieros y de ganancias y pérdidas, y toda otra información financiera o de cualquier otra naturaleza, sea de la Corporación o de los deudores solidarios o garantizadores solidarios, que el BANCO pueda requerir que afecte su negocio o sus actividades financieras o las del DEUDOR;

h) Permitir que el BANCO o cualquiera de sus agentes o representantes examinen, resuman y copien de los récords y libros de contabilidad, o que visiten las propiedades del DEUDOR, o que discutan los asuntos, finanzas y cuentas del DEUDOR, que tengan relación con el Préstamo, de tiempo en tiempo, y según sea razonable.

i) Según sea requerido de tiempo en tiempo, proveer al BANCO cualquier otra información que el BANCO pueda requerir, financiera o de cualquier tipo que afecte al negocio, al DEUDOR;

j) Pagar a tiempo todas las contribuciones, arbitrios e imposiciones gubernamentales, impuestas al DEUDOR, a sus ingresos o ganancias o a cualquiera de sus propiedades. El DEUDOR no vendrá obligado a pagar cualquier contribución o imposición gubernamental, cuyo pago esté siendo impugnado de buena fe y mediante el procedimiento correcto. El BANCO podrá requerir en los pagos a la línea de crédito fondos suficientes para que el pago de dichas contribuciones con un mes de anticipación a la fecha de su vencimiento. Disponiéndose, que en la eventualidad de que surja cualquier aumento en dichas contribuciones será responsabilidad del DEUDOR remesar al BANCO, tan pronto le sea requerido, los fondos necesarios para cubrir dichos aumentos. De ser necesario, para garantizar el reembolso de estos gastos, las hipotecas, si alguna, a constituirse a favor del BANCO sobre los bienes inmuebles que garanticen el préstamo podrá ampliarse en una suma equivalente al diez por ciento (10%) de la cantidad original del préstamo.

k) Mantener las propiedades que garantizan el Préstamo en buenas condiciones, y sus demás propiedades en uso o disponible para uso en la operación de su negocio, manteniendo el buen funcionamiento de las mismas y efectuando, de tiempo en tiempo, las reparaciones ordinarias y necesarias o extraordinarias, y aquellas renovaciones, adiciones, sustituciones, mejoras y obras útiles que resulten necesarias para preservar y mantener su valor de forma tal que la operación que de ellas llevan a cabo en dichas propiedades se realice en todo momento de forma provechosa y no se alteren, destruyan, transfieran o utilicen las mismas para cualquier otro fin que no sea aquél para el cual ahora se utilizan. Permitir al BANCO, sus agentes o representantes inspeccionar las mismas cuantas veces estime el BANCO resulte razonable y necesario, y cumplir con todos los requisitos que razonablemente el BANCO pueda exigir con relación a dicha inspección. El DEUDOR no enajenará ni gravará las propiedades que garantizan el Préstamo, mientras se encuentre vigente el préstamo, sin el consentimiento previo y por escrito del BANCO.

9

l) Mantener los bienes que garantizan el Préstamo asegurados contra los riesgos de incendio, huracán, terremoto e inundaciones (si aplica), así como contra cualesquiera otros riesgos que el BANCO pueda requerirle razonablemente, incluyendo de responsabilidad pública. Tales pólizas a ser emitidas por su valor asegurable, o de otro modo, una suma adecuada, por compañías de solidez económica y buena reputación, y a contener un endoso o cesión por favor del BANCO que sean aceptables a éste, estipulándose que si el DEUDOR incumple tal obligación, el BANCO podrá, en el uso de su discreción, obtener y pagar tales pólizas y endosos sin necesidad de notificarle y sin su consentimiento y que, en tal caso, vendrá obligado a rembolsar al BANCO tales sumas, más intereses a la tasa estipulada en el Contrato. El BANCO podrá requerir en los pagos a la línea de crédito fondos suficientes para el pago de dichas pólizas de seguro con un mes de anticipación a la fecha de su vencimiento. Disponiéndose, que en la eventualidad de que surja cualquier aumento en dichas pólizas será responsabilidad del DEUDOR remesar al BANCO, tan pronto le sea requerido, los fondos necesarios para cubrir dichos aumentos. El DEUDOR entregará de tiempo en tiempo y según se lo requiera el BANCO copia de todas las pólizas de seguro requeridas y solicitará que en cada póliza se inserten endosos uniformes de pérdida ("standard loss payable endorsements") a favor del BANCO, que sean satisfactorios a éste. El DEUDOR también acreditará al BANCO, mediante los correspondientes recibos y copias de pólizas, que el DEUDOR ha adquirido y pagado las pólizas correspondientes del Fondo del Seguro del Estado. De ser necesario, para garantizar el reembolso de estos gastos, las hipotecas, si alguna, a constituirse a favor del BANCO sobre los bienes inmuebles que garanticen el préstamo podrá ampliarse en una suma equivalente al diez por ciento (10%) de la cantidad original del préstamo.

m) Si aplica, el DEUDOR deberá cumplir con la reglamentación de la Agencia Federal de Protección Ambiental (EPA, por sus siglas en ingles) y someter documentación al BANCO sobre el cumplimiento de la misma; a mantener al BANCO debidamente informado sobre cualquier impacto ambiental adverso, al momento que ocurra; el BANCO podrá solicitar al DEUDOR, si fuera necesario, una auditoría ambiental a ser realizada por peritos en el campo para determinar el riesgo y el impacto de la contaminación para la toma de acción pertinente.

n) Permitir que el BANCO o cualquiera de sus agentes o representantes examinen, resuman y copien de los récords y libros de contabilidad, o que visiten las propiedades del DEUDOR, o que discutan los asuntos, finanzas y cuentas del DEUDOR, que tengan relación con el Préstamo, de tiempo en tiempo, y según sea razonable.

o) Notificar prontamente al BANCO, de cualquier reclamación, demanda o procedimiento llevado contra o con el conocimiento del DEUDOR que pudiera tener un efecto materialmente adverso, sobre los negocios o la condición financiera del DEUDOR.

p) Gestionar y realizar, a su cuenta y cargo todos los permisos y acciones necesaria bajo las leyes o reglamentaciones aplicables, para remediar cualquier incumplimiento de este Contrato, el Pagaré y los demás Documentos del Préstamo.

q) Notificar al BANCO de cualquier condición, hecho o suceso que pueda constituir causa de incumplimiento bajo este Préstamo, o en virtud de cuya notificación o el mero transcurso del tiempo o ambos, pueda constituir causa de incumplimiento, entregándole una certificación suscrita, indicando específicamente la naturaleza de dicha causa, tiempo durante el cual ha existido, y qué curso de acción se propone iniciar con relación a la misma. Tal notificación deberá ser cursada al BANCO dentro de diez (10) días siguientes a la ocurrencia del incumplimiento.

r) Otorgar prontamente, cualquier declaración escrita, contrato o acuerdo asegurado que el BANCO pueda requerirle de tiempo en tiempo, confirmando los fines, términos, acuerdos y condiciones de este Contrato y de los Documentos del Préstamo.

s) A pagar y costear cualquier servicio de consultoría que el BANCO pueda requerir durante la vigencia del préstamo.

t) A aceptar que se coloque en el lugar donde se va a llevar a cabo el proyecto, un letrero que indique que el mismo ha sido financiado por el BANCO.

u) A notificar por escrito al BANCO, con no menos de treinta (30) días de anticipo, de cualquier cambio en la administración del proyecto o gerencia.

v) A adscribirse al método de pago directo.

w) A cumplir con cualquier otro financiamiento con el BANCO o cualquier otra institución. Una violación a los términos y condiciones a cualquiera de los términos y condiciones de esos

10

préstamos constituirá también una violación a los de este préstamo y deberá ser informado por escrito al BANCO inmediatamente.

x) A pagar y costear todo y cualquier servicio legal para lograr el cierre y otorgamiento de los documentos legales requeridos para esta facilidad de crédito.

y) El financiamiento deberá ser considerado por el Tribunal de Quiebras como "Superpriority" ante los demás acreedores. El DEUDOR deberá someter al BANCO el plan de reorganización aprobado por el Tribunal de Quiebras durante la vigencia del préstamo.

z) Cumplir con todas las condiciones estipuladas en la carta de compromiso y sus enmiendas y modificaciones emitidas por el BANCO.

Sección 6.02. **Estipulaciones Negativas del DEUDOR**. Mientras mantengan vigentes las obligaciones del DEUDOR y hasta que se efectúe el pago total de la deuda evidenciada por el Pagaré, los DEUDORES se comprometen a <u>NO</u> hacer lo siguiente, sin el previo consentimiento escrito del BANCO:

a) Constituir, asumir o permitir la existencia de cualquier hipoteca, gravamen y/o cargas sobre todo o parte de su propiedad, o de las propiedades ofrecidas en colateral, bienes, o capital, existentes o adquiridos con posterioridad, excepto por aquellos a favor del BANCO.

b) Asumir, garantizar, endosar o de cualquier manera responsabilizarse por las obligaciones de cualquier persona, entidad o corporación, existente o creada con posterioridad a este Contrato, excepto por los endosos de instrumentos negociables para depósito o cobro o transacciones similares en el curso ordinario del negocio, que puedan afectar negativamente el cumplimiento de este Contrato de Préstamo.

c) Vender, ceder, alquilar, cambiar, transferir o de cualquier otra manera disponer de todo o de parte sustancial de sus activos existentes o adquiridos con posterioridad a este Contrato excepto en el curso ordinario del negocio, según se ha conducido hasta ahora y sólo a cambio de consideración total y adecuada.

d) Cambiar su actual naturaleza y personalidad jurídica, ya sea por fusión o consolidación, reorganización corporativa o transacción similar, o cambiar o permitir cambios en sus accionistas o socios sin la previa autorización escrita del BANCO.

e) Incurrir en deudas que no son las que rutinariamente, se incurren en el curso ordinario del negocio.

f) Incurrir en cualquier tipo de actividad que no fuese ni prudente, ni razonable y que como efecto directo produjese cualesquiera causas de incumplimiento a lo contenido en este Contrato.

g) Si es una corporación o sociedad: (1) realizar adelantos o préstamos a sus accionistas, socios, oficiales o directores, ni a empresa alguna en la que sus accionistas, socios, oficiales o directores puedan tener algún interés; (2) conceder bonos a sus accionistas, socios, oficiales o directores, o aumentos de sueldo a sus accionistas, socios, oficiales o directores que excedan el aumento en el costo de vida según los índices publicados por el Departamento del Trabajo y Recursos Humanos; (3) pagar dividendos o distribuir en efectivo o realizar alguna clase de distribución de ganancia o retiro de capital; y (4) hacer distribución alguna de los activos del negocio con excepción de compensaciones razonables por servicios prestados, ni dar tratamiento preferente, préstamos, regalos, adelantos, a ninguno de sus accionistas, directores, socios, empleados u oficiales, ni a compañía directa o indirectamente controlada o afiliada, ni a ninguno de sus oficiales o directores, o empleados; todo sin el previo consentimiento previo y por escrito del BANCO

h) Permitir que sus operaciones sean administradas por otras personas que no sean las personas o entidades que al presente la administran, sin el previo consentimiento escrito del BANCO.

i) Efectuar pago total o parcial por concepto de deudas con terceros, si dichos pagos no le son requeridos por pactos en virtud de contratos que actualmente le vinculen u obliguen, ni acordará modificación, enmienda o reestructuración de índole alguna a dichos contratos y en relación con dichas deudas si con ello se acelera el vencimiento de pagos al principal de las mismas o afectan de alguna forma el cumplimiento con las obligaciones aquí contraídas.

j) Descuidar o abandonar sus propiedades, o las propiedades ofrecidas en colateral, ni permitir que cualquier edificación o mejora en las mismas sea removida, demolida o que su estructura sea alterada total o parcialmente, o que cualquier mueble por destino allí ubicado o bienes personales sea removido o destrozado, sin el previo consentimiento por escrito del BANCO, ni permitirá acto alguno que desprecie o menoscabe el valor de sus propiedades.

11

k) Sustituir las propiedades que garantizan el Préstamo.

l) Tomar financiamiento adicional sin el previo consentimiento previo y por escrito del BANCO.

m) Permitir que sus accionistas o socios entreguen en prenda sus acciones o participaciones en sociedad para garantizar préstamos.

## ARTICULO VII

### INDEMNIZACION

El DEUDOR acuerda defender, indemnizar y liberar de toda responsabilidad al BANCO de cualquier y toda reclamación, daño, sentencia, penalidad, costo y gasto (incluyendo aquellos gastos y honorarios de abogado que resulten por razón de haber recurrido el BANCO a sus derechos bajo esta cláusula) que surja, directa o indirectamente, del incumplimiento del DEUDOR de conformidad a lo establecido en el Contrato. No obstante, lo dispuesto en cualquier otro apartado de este Contrato, esta cláusula de indemnización sobrevivirá la terminación de este Contrato.

## ARTICULO VIII

### MISCELANEOS

Sección 8.01. **Pagos por el BANCO**. Si el DEUDOR omitiere efectuar cualquier pago o realizar cualquier acto que le fuere requerido mediante el presente Contrato, cualquier otro contrato con el BANCO o mediante cualquiera de los Documentos del Préstamo, el BANCO, sin previa notificación o requerimiento al DEUDOR, y sin relevarle por cualquier incumplimiento o liberarle de cualquier obligación podrá, a su entera discreción o arbitrio, sin obligación alguna de su parte de tener que actuar en la misma forma en el futuro, efectuar dichos pagos o realizar dicho acto a cuenta y cargo del DEUDOR sin entrar a considerar la validez de ello. Cualquier costo o suma así incurrida por el BANCO, incluyéndose, pero sin limitarse, al pago de las primas de las pólizas de seguro, contribuciones impuestas a la propiedad que garantiza el Préstamo, gastos en gestiones de cobro extrajudiciales relacionados con el Préstamo y los gastos y honorarios de abogados, con los cargos y en la forma en que se dispone en la Sección 3.02, constituirá una deuda adicional del DEUDOR bajo este Préstamo, la cual deberá satisfacer al BANCO de inmediato al serle requerida.

Sección 8.02. **Dirección de las Notificaciones**. Todas las notificaciones, requerimientos, instrucciones y otras comunicaciones provistas por este Contrato se harán por escrito y serán enviados por correo, fax o entregado a la mano a la parte a las direcciones que a continuación se mencionan o a cada parte, a cualquier otra dirección, que de tiempo en tiempo sea notificado por escrito a la otra parte, cumpliendo con los requisitos para notificación especificados en esta Sección. Todas las antes mencionadas notificaciones, requerimientos, instrucciones y otras comunicaciones, se considerarán efectivas en el momento en que se depositen en el correo, se envíen por fax, según sea el caso, dirigidos de la manera antes especificada:

**AL BANCO:**     BANCO DE DESARROLLO ECONOMICO
PARA PUERTO RICO
PO Box 2134
San Juan, PR 00922-2134

**AL DEUDOR:**     AAA IMPORTS, INC.
PO Box 1509
Vega Baja, PR 00694-1509

Sección 8.03. **Pago de Gastos**. El DEUDOR acuerda pagar a la demanda los gastos y honorarios de abogado, incurridos con relación a la preparación, otorgamiento y entrega de este Contrato, el Pagaré, los Documentos del Préstamo, y cualquier otro instrumento o documento al cual se hace referencia o se usa con relación a este Contrato, o cualquier enmienda y todos los comprobantes y sellos de rentas internas necesarios para dichos documentos e instrumentos y presentación en los registros respectivos.

Sección 8.04. **Terminación**. Este Contrato obligará a cada una de las partes aquí comparecientes y a sus respectivos sucesores o cesionarios. El DEUDOR no podrá ceder sus derechos, obligaciones y deberes bajo este Contrato o cualquier interés aquí especificado sin el previo consentimiento escrito del BANCO.

12

Sección 8.05. **Pagos en Días No-Laborables**. Siempre que, cualquier pago bajo este Contrato o bajo el Pagaré debe ser hecho en una fecha que no es un Día Laborable, dicho pago deberá hacerse el próximo Día Laborable y dicha extensión del tiempo deberá ser incluida en el cómputo de interés pagadero y deberá ser pagado con relación a dicha extensión al próximo Día Laborable.

Sección 8.06. **Ley que Rige**. Este Contrato, el Pagaré y todos los documentos de Préstamo se regirán e interpretarán de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico.

Sección 8.07. **Separabilidad de las Cláusulas**. Si alguna cláusula de este Contrato fuera declarada inválida o ilegal por un tribunal con jurisdicción, la misma se tendrá por no puesta y no se afectará la validez y efectividad de las demás cláusulas y condiciones de este Contrato.

Sección 8.08. **Encabezamientos**. Los encabezamientos de las secciones y cláusulas en este documento, se incluyen para referencia y conveniencia y no constituirán parte alguna de este Contrato.

Sección 8.09. **Renuncia**. Una aceptación por parte del BANCO de cualquier pago luego de su vencimiento, o una renuncia por parte del BANCO, de acción en cualquier caso de incumplimiento bajo éste documento o relacionado con el Préstamo, no afectará las obligaciones del DEUDOR ni el derecho del BANCO con relación a cualquier otro pago o incumplimiento.

EN TESTIMONIO DE TODO LO CUAL, los comparecientes aceptan y otorgan este Contrato, y lo firman en San Juan, Puerto Rico, hoy día 24 de noviembre de 2010.

**BANCO:**
**BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO**

_____          _____
IVONNE OTERO GUZMÁN                MARCOS LUIS DE LA VILLA RODRÍGUEZ

**DEUDOR:**

_____
AAA IMPORTS, INC.
REPRESENTADO POR: ANDRÉS JOSÉ MARTÍNEZ QUIÑONES

**GARANTIZADORES SOLIDARIOS:**

_____          _____
ANDRÉS JOSÉ MARTÍNEZ QUIÑONES, POR SI    DOLORES SERVINO ALVEZ
Y EN REPRESENTACIÓN DE
ORLANDO MOLINA ADROVET Y
SANDRA MONTAÑEZ VÉLEZ

_____
CARIAN MANAGEMENT, INC., REPRESENTADA POR
ANDRÉS JOSE MARTINEZ QUIÑONES

AFFIDÁVIT NUMERO: 3,650

Reconocido y suscrito ante mí por Ivonne Otero Guzmán y Marcos Luis de la Villa Rodríguez, ambos en representación del Banco de Desarrollo Económico para Puerto Rico, en sus caracteres de Oficiales Autorizados, de las circunstancias personales antes expresadas, a quienes doy fe de conocer personalmente; y por AAA Imports, Inc., representado por su Vice-Presidente, Andrés José Martínez Quiñones, quien además comparece como garantizador solidario y en representación de los garantizadores, Orlando Adrovet Molina, Sandra Montañez Vélez y Carian Management, Inc., y Dolores Servino Alvez, t/c/c Dolores Servino Martínez, de las circunstancias personales antes expresadas, a quienes por no conocer personalmente identifico conforme al Artículo 17(c) de la Ley Notarial vigente.

En San Juan, Puerto Rico, a __24__ de noviembre de 2010.



_____
ISMAEL ENRIQUE JUSINO TORRES
NOTARIO PÚBLICO

14